Case number 3-19-0758, International Association of Firefighters, Local 50, Appalachia v. City of Peoria, Appalachia. Ms. Seitz, are you ready? Yes, I am, Your Honor. Please begin. May it please the Court. My name is Esther Seitz and I'm here to represent the City of Peoria. In 1997, the General Assembly passed the Public Safety Employees Benefit Act, which I will refer to as PSEBA. In that statute, it specifically provides that a firefighter who suffers a catastrophic injury or is killed in the line of duty is entitled to employer-paid health insurance premiums for themselves, their spouse, and their dependent children. PSEBA is silent on what type of injury triggers this benefit, except to say that the injury must have occurred while the firefighter was responding to a reasonably perceived emergency, an unlawful act, or during the investigation of a crime. Critically, however, PSEBA leaves the rest to local government employers to figure out. And because of this, cities, like my client, which employs firefighters, have historically administered and paid for those benefits. It's also become practice that home rule units select and administer the health insurance plans. The state really has very little involvement in PSEBA, other than to require local governments to offer, pay for, and administer the benefits. Because PSEBA leaves crucial terms which trigger undefined, the Supreme Court in Crow was tasked with defining the term catastrophic injury. Now Crow observed that the term is ambiguous when looking only at statutory text, and therefore resorted to examining the legislative debates. Based on the statements of a handful of lawmakers, Crow ruled that a firefighter had suffered a catastrophic injury and therefore was entitled to PSEBA benefits when she had been awarded a line of duty disability pension. Such pensions are awarded by local pension boards comprised of city officials and local firefighters. Crow's context is crucial. There the court had to rule in a blank slate because neither state nor local lawmakers had acted to define catastrophic injury. And again, that term is as my client is required to do under the statutory scheme. Crow does not have the benefit of an ordinance like the one that's being challenged here, which explains what an injury or a catastrophic injury is for PSEBA purposes. Crow has been followed over the years, but the city's legislative act in passing this ordinance supplanted Crow. To be sure, the city has the constitutional home authority under Article 7, Section 6 of the Illinois Constitution to legislate on matters which pertain to its government and affairs if the General Assembly did not expressly and specifically strip it of this power. And I'm going to demonstrate today that we satisfy both of those requirements. First, PSEBA benefits, really just health insurance benefits for firefighters, pertain to local government and affairs because they're a basic term of employment between the city and its firefighters. Now that relationship is an inherently local one. Firefighters are hired on the local level. They reside locally, often pursuant to residency requirements. They serve in local fire districts. Their injuries, which give rise to PSEBA benefits, are sustained locally, and the benefits are generally enjoyed locally because that's where the firefighters live. In fact, there isn't a uniform statewide practice that governs the local hiring and employment of firefighters. The firefighters are subject to the terms of local collective bargaining agreements. The city also pays for and administers PSEBA benefits. The city council levies the taxes that are used to fund the benefits, and each city chooses its own health insurance plan. But perhaps most importantly, PSEBA's language that limits home rule involvement specifically cites to Article 7, Section 6i, and that's the provision that states that absent a specific limitation, home rule units can exercise concurrently with state any home rule power. Now, PSEBA's specific reference to that section really underscores that the General Assembly envisioned that home rule units would be involved in PSEBA issues, and that the PSEBA benefits do pertain to local government affairs, which brings us to the second prong. The General Assembly did not expressly and specifically strip the city of its constitutional home rule authority to legislate on PSEBA benefits, and this is because Article 7, Section 6, again of the Illinois Constitution, pronounces that home rule powers are broad. Specifically, it provides that a home rule unit may exercise and perform concurrently with the state any power or function of a home rule unit to the extent that the General Assembly, by law, does not limit the concurrent exercise or specifically declare the state's exercise to be exclusive. Now, here nothing in PSEBA declares the state's exercise to be exclusive, and that then brings us to the question, to what extent did the General Assembly, by law, limit the city's power to regulate PSEBA? Section 7 of the Statute of Statute is helpful here because it provides that a state can limit home rule authority under Section 6I of the Illinois Constitution, which again is the same clause that PSEBA invokes, only if, and I quote, the language specifically sets forth in what manner and to what extent it is a limitation on home rule powers. Now, the word language refers to statutory language, the PSEBA's text, not to lawmaker commentary and not to case law. Yet here the only limitation that PSEBA supplies is that benefits may not be provided in a manner that's inconsistent with PSEBA, but the ordinance is not inconsistent with PSEBA. It supplements it. PSEBA contains gaps. Crowe noted that, Ingham noted that, Peterson noted that. It really is, so do you see that the Peoria's ordinance is a gap filler, or is it limits the benefits that can be awarded to a firefighter? That would be by defining the term that's in the legislation, it may limit what the General Assembly envisioned when they required the PSEBA benefits to be offered to firefighters in these circumstances. We disagree with the suggestion that the ordinance limits what PSEBA guarantees. You are, but we would agree with the suggestion that the ordinance supplements or fills a gap in PSEBA. What about the term gainful employment or gainful work? That is among the definitions that informs what a catastrophic injury is, and that definition is necessary to render benefit eligibility determinations, and that is a definition that, like the other definitions in the ordinance, is not repugnant or does not take away from the PSEBA's text. What it is inconsistent with is the way that PSEBA's gap has generally, or in the past, been filled because it's been filled by Crowe, and Crowe had a different definition for catastrophic injury. I mean, Crowe's been around long enough that the General Assembly didn't agree with its interpretation, couldn't they have changed the statute? They could have, but in the same vein, the home rule units, like my client, can change it because home rule and state powers are equal. Well, you could expand, but I don't think you can limit what has been said by the General Assembly in terms of home rule units. You can't grant less than the General Assembly has granted, but you could give more. Yes, I absolutely agree. It's just that what the General Assembly has granted, the General Assembly didn't grant Crowe's definition, right? The courts did because they had to resolve this conundrum of a definitional gap, no definition, so the court had to tackle that problem and to supply a definition. Now, that definition gets replaced the moment a lawmaker, here the local government, steps in and supplies the definition, and we did that, and we had the authority to do that, and that definition stands unless and until the General Assembly, which they can do in a subset later, say that we don't have the power to do that. But hasn't the General Assembly implicitly done that by not rejecting Crowe? No, it has not, and that would be to say that what that would be suggesting is that this is a long history of case law from the Supreme Court that there should be no judicial preemption, meaning assuming that the General Assembly has somehow adopted something because the judiciary ruled and that definition stood, unless, and there's, I guess, an exception to that, unless it fits the case of oppression, it would result in the clearest cases of oppression, injustice, or interference by a local ordinance with a vital state policy, and this is not that type of scenario. Okay. What the city's ordinance does here is it fills definitional gaps, and those definitions fit neatly within the PSEBA's statutory scheme that are crucial to rendering benefit eligibility determinations. Now, as Justice O'Brien suggested, the ordinance and Crowe are inconsistent, but what's important is that Crowe is not statutory text, and that, and only that is what's required to quell home rule authority. If this court rejected the city's definition of catastrophic injury because it somehow found that Crowe left no room for the home rules legislation because it became first, because Crowe came first, or because it's been in place for so long, then it would be reading out of the commands. The first is the command in section 6I that on local issues, home rule and state powers are concurrent unless and until the General Assembly, by law, specifically limits home rule powers. And second, the command in section 6M of the Illinois Constitution that home rule powers have to be liberally construed. We ask you today that you apply the text in the spirit of article 7, section 6, and uphold Peora's ordinance as a valid exercise of home rule authority. Thank you. Thank you, Justice Sykes. Justice O'Brien, Justice McKay, any questions? Not at this time. And Mr. Marzullo, you're the first answer. Yes. Very good. May it please the court, again, Jury Marzullo on behalf of Local 50 in this matter. At the outset, when you look at the statute, we have section 5 of the PACEBA Act in which the directly in section 5. When you look at section 20 of this act, what you find is exactly what was not in the Palm case, which is what the Appellant is relying upon, which is an employer, any employer that hires a full-time and utilizes a full-time firefighter in the state of Illinois may not act in a manner inconsistent with the requirements of this act, of the PACEBA Act. So the state found that there is no concurrent interest by specifically passing section 20 home rule of the PACEBA Act. After the act was passed in 1997, no municipality went and found an ordinance or drafted an ordinance, excuse me. In 2003, a question arose as to what does catastrophic injury mean? That is the Crowey case that we heard so much about. And the Illinois Supreme Court did exactly what, in my humble opinion, it is supposed to do, which it looked at the language and said, is it clear and unambiguous? Is it ambiguous? What does catastrophic injury mean? And it did what it was supposed to do, and it looked at the floor debate from both the Illinois House and the Illinois Senate. And every single time, those state senators and state reps said, catastrophic injury means line of duty disability. Crowey rejected every other assumption or every other proposal, and it found that. It is important to note that since 2003, every single case that has come before the Illinois Supreme Court or appellate courts in the state of Illinois has upheld catastrophic injury as synonymous with a line of duty disability pension. And in fact, Healan went so far as to say it's now a matter of law. It is set in stone that catastrophic injury means line of duty disability. And to both Justice O'Brien and Justice McDade's questions, correct. The state legislature in all of these cases looked at this. There is no legislation that has changed this. The state legislature left this alone. Under the relevant case law, this definition of catastrophic injury, which is synonymous with line of duty, has now become part of the statute. And that is exactly what took place, and it has been the law for 17 years. So with section five and with section 20, the state legislature said, we are taking this out of your hands. And because of that, if you recall in the Palm case, there was this issue of section six I and this concurrent language. And in section six I in Palm. Therefore, the state legislature stated you cannot, I'm sorry, what the state legislature said is you are able to act concurrent. That is exactly the opposite of what we have here when you look at section five and section 20. So there is no concurrent jurisdiction. The city of Peoria is not on equal footing with the state of Illinois in passing legislation. The state of Illinois passed this under section 10. They passed it for an employer, any employer that hires the full-time firefighters. And this is what they meant, and it's what they meant through Crowley and the dozens of cases. If this court were to rule in favor of the appellant in this matter, the city of Peoria would in effect be overruling 17 years of very clear bright line jurisprudence in this matter. And that just, it cannot happen. Under the Peoria theory of the case, Bloomington wouldn't even have had to go to court. Crowley versus city of Bloomington wouldn't even exist. Crowley, I'm sorry, Bloomington would have just simply passed an ordinance and that's what they could have done. But that's not what happened here because those municipalities, unlike the city of Peoria understood that there is a home rule exception, that this is a state interest and a state issue. So when you look then at the case law, the next standard is, which was alluded to, which is the StubHub case, which is 6A of the home rule provisions. And again, it is the three-part bright line test, the nature and extent of the problem, the unit of government with the most vital state interest, and the role traditionally played by local and statewide authorities in dealing with this issue. I would suggest to this court, what I would suggest to be the obvious, which is in the nature extent of the problem is every firefighter in the state of Illinois goes to structure fires and responds to vehicle accidents and shootings and hazardous material incidents and falls through a roof, God forbid, etc. Every city in the state of Illinois that employs full-time firefighters has the exact same problem, which is firefighters who injure themselves and are catastrophically disabled by the, and found that way, by the statewide Article IV pension system that has its own set of laws, standards, etc. Every city has these injured firefighters. It is not just a Peoria problem. Peoria cannot sit there and say, well, Peoria has injured firefighters, but Pekin does not. That is not the case. And sorry, excuse me, I'll get to the rest in a second. The next standard is, again, the unit of government with the most vital state interest. And again, Section V of the statute tells us straight out, this act fulfills an important state interest. If you were to rule in favor of the appellant in this matter, quite honestly, chaos would reign. And that's why the limitation on a box alarm to the exact same fire, both of them are injured and the exact same fire. The Pekin battalion goes back and gets a line of duty disability. A Peoria battalion goes back and gets a line of duty disability. Responding to the emergency, one would get placebo benefits. One potentially would not get placebo benefits based on the municipal ordinance. And it actually goes further. And the courts, when they talk about home rule, understand about this important state interest. And it actually goes further. On January 2nd at the board meeting for Peoria, they could pass an ordinance that says X, Y, and Z. And then at the next city council meeting or the next election, they could amend that ordinance that says A, B, and C. Now it's a totally new standard. And then the next month they could pass a third ordinance that says A, B, and C. The final issue in which I want to talk about, because we are splitting up our time again, is the role traditionally played by local and statewide authorities in dealing with this issue. It has been a state issue since 1998. These cases have existed since 2003. And what those cases have done has had simply said, you cannot make up a new definition of injury, gainful work, completely brand new. You, Appalachia, are trying to bypass what you cannot get politically by changing the state statute. At the end of the day, it's as simple as that. Catastrophic injury, line of duty disability, and a firefighter sign, were you responding to what's reasonably believed to be an emergency? This is the vital state interest. All of the cases, and I can go in it, but we have time constraints, but all of the cases, as we set forth in our brief, that have found that there is home rule authority are completely inapplicable. Skadron, Bolingbrook, Evanston, Klatomos are talking about truly local issues, local concerns, in which the state of Illinois legislature even found specifically during constitutional conventions, certainly in the case of Klatomos, that this is a local concern for home rule authority, etc. There are reasons why they found that way. But in this particular case, this is an important vital state interest, and it should be addressed that way. These cases have become part and parcel of what it means to suffer a catastrophic injury. What I would do now is I would turn it over again to my colleague, Mr. Duda, who will be talking about the statewide laws and statewide statutes and how they interplay with one another. Unless there are any questions by the justices, I want to be obviously cognizant of time here. I don't have a question. Thank you, Mr. Marzullo. Mr. Duda. Mr. Duda. May it please the court. My name is Thomas Duda. I'm co-counsel with Mr. Marzullo representing Local 50. Our arguments began this morning with the statement that it's crucial to understand by this court that the payment of health insurance to firefighters is a purely local issue. It's my job to disprove that statement as being accurate. The fact is that scheme that began over 50 years ago and the crescendo, and I'm going to end my oral argument discussing the Helan case, but if you look at the benefits that the state of Illinois has mandated for firefighters and police officers, they begin with the pension code. I must say I can't find the year that the very first fire and police pension code was passed, but I think the current version started in 1951. The state prescribed a system of length of service benefits and disability benefits for police and fire in two separate articles of the code. Under that statute, firefighters were provided with line of duty disability benefits if they suffered an injury or illness that ended their career. In July 1st of 1975, for the very first time, the state of Illinois automatically included firefighters in the workers' compensation scheme. I don't think anyone would dispute that the workers' compensation system that the firefighters became a part of is a statewide system. Provisions were made to coordinate the workers' compensation benefits with the line of duty disability benefits in the pension code from the very beginning. In 1977, a offset provision was enacted, again, to more closely coordinate the payment of injury benefits on a statewide basis between the workers' compensation act and the pension code. In 1977, police and fire got enhanced benefits for the first 12 months under a statute called the Public Employee Disability Act, which just for the interest of the court, it has an identical preemption clause as the preemption clause found in PSEBA. The enhanced benefit also had a coordinating provision that prescribed the formulae by which firefighters and police officers would not receive double recovery. So that brings us to 1997, the enactment of the Public Safety Employee Benefits Act. Though it's a separate statute, beginning with CROI but ending with HELEN was intimately integrated into the system that I'm an injury that leads to the award of a line of duty disability benefit. But I think what's most important is that that eventually led to the decision of the Illinois Supreme Court in the Village of Vernon Hills case versus HELEN. And what the court held in that case I think is important. Because the legislature intended an injured public safety employee to be eligible for benefits under section 10A of the act, being PSEBA. Whenever his or her injuries were sufficient to qualify for a line of duty disability pension, the pension board's award establishes as a matter of law, not as a matter of collateral estoppel or some sort of rule of interpretation, as a matter of law that the public safety employee suffered a catastrophic injury. By virtue of the HELEN decision, the PSEBA statute has been intimately and it cannot be surgically removed from the system of benefits that have been prescribed for easily over 50 years. This is not a local issue. This is a state issue. And what the HELEN court has emphasized is that there is an intimate connection between the line of duty disability provisions in the pension code and the catastrophic injury provisions in the PSEBA statute. Therefore, this is not a local issue. And thank you for your time and attention this afternoon. Thank you. My response to HELEN is the same as my response to Crow. Those cases were decided on critically different facts. And that critically different fact is the reality that in neither of those cases, the home rule had actually home rule unit had actually passed an ordinance that defined catastrophic injury or injury. This really is a case of first impression. Because Peoria, for the first time, is a lawmaker, a lawmaking legislative body that passed an ordinance that passed a law that defined those terms. And those terms have to trump any prior judicial definitions on that same point, because it is the prerogative of the lawmaker and not the judiciary to govern our government and affairs for home rule units and to decide what benefits are intended to public employment. When the General Assembly says we want to provide benefits for, you know, Senator Donahue's statement was our intent to define catastrophically injured as a to take a line of duty disability. When the legislature says that this is the definition, this is what they are intending to do, then how is it that even with all of the home rule power that you have, that you can limit what the intent of the General Assembly was in this context? What we have to look at is the General Assembly's text, plain text of the statute, because that's the law that Section 6 of the Illinois Constitution, Article 7, refers to. So lawmaker commentary that somehow supplies a definition, that didn't make it into the plain language of the statute, and therefore doesn't matter. Well, it only doesn't matter if the plain language is unambiguous. And so are you saying that if you're saying catastrophically injured is unambiguous, then why would you need an ordinance to define it? Catastrophic injury is not defined in the statute. It is therefore a task that can be done by the authority. Now, Peoria did so after, Pasiba had been on the books since 1997, but that's Peoria's prerogative as a lawmaking body to do whenever they see fit. So you feel that you have the authority to reduce the injuries, reduce where this should be implemented, in light of what you know is the General Assembly's intent? No, because in order to ascertain the General Assembly's intent, we have to look in, and if it is to trump home rule powers, we have to look to the plain text of the statute that the General Assembly actually passed. The General Assembly cannot, through legislative debates, preempt home rule powers. Because remember, state and local powers are concurrent, and here they fit neatly within, into each other. The plain text of the statute and the plain text of the ordinance, they complement each other. It's a symbiotic relationship. I would agree with you that there are statements of an individual lawmakers that supply contrary definitions, but those don't matter. Not for purposes of home rule, for taking, for purposes of stripping the city of Peoria of its home rule powers. One single lawmaker cannot strip the city of its home rule powers. Those are constitutional powers, and they're specifically set forth in Section 6, and they can only be taken away under certain specific circumstances, and those require the General Assembly to act via law, that is, by implementing statutory text. So what is, oh, excuse me, Mary, go ahead. What is the effect of Section 320 slash 20 of, of the, I don't know what it's called, the Act? Yes, what they call the Preemption Clause. Yeah, what is the meaning of that? Yeah, so it says that, um, an employer may not provide benefits to person covered under this Act in a manner inconsistent with the requirements of the Act. I agree, home rule authority cannot, we cannot pass an ordinance that results in benefits that are inconsistent with PSEBA. Our ordinance has to complement, supplement, fill gaps in PSEBA, and it does that. It's really important to read that language in Section 20, the preemption language, uh, limitedly, and the only thing it does is to say that whatever benefits we make available can't be repugnant to PSEBA, and they're not repugnant to PSEBA. They're repugnant, perhaps, to CRO, but frankly, CRO doesn't matter anymore. So the, okay, that's your argument, that it doesn't matter anymore. That's right. It has been replaced for purposes of Peoria the moment that Peoria passed its ordinance and thereby exercised its home rule authority. So I have a final question. I know that you're telling us, but in, in your scheme, then when we have every home community giving a different definition to the term catastrophically injured, is there not a danger of, um, the residents in your community not having, uh, firefighters because they choose to go to a community where if they are injured, that they are, they're granted, um, benefits, you know, because then we have to get into what is gainful, you know, if you can be employed. And so what is the, you know, public safety and the state interest, how is that protected by, um, the ability of every home rule community to give a separate definition? Okay. So the home rule powers, um, and really article, um, seven section six was enacted, um, based on the assumption that municipalities are governed best by addressing local problems with local solutions. That's not what I asked you. I asked you, is there a concern that, um, if every home rule community is able to give a different definition that there is going to be, um, if you could put the community at risk when you can't get firefighters, because someplace else has better and different benefits. No, because we could great, great benefits too, right? We could give benefits at a lower threshold or a higher threshold. It's just that we're in charge of creating, um, the incentives for that employment relationship, or maybe compared to other community disincentives, but frankly, that's our decision to do. How does that come forward with the statute, this is a statewide interest. And it absolutely is a statewide interest, but it's also a local interest. It's both there's concurrent authority because the general assembly did not specifically take it away. There's nowhere in the SIBA that the general assembly said that the SIBA issues are only for the state to decide. They're not a local matter. If they wanted to do that, they could have done that, but that is not the limiting language in section 20. Okay. Thank you. Thank you. All right. And thank you, Ms. Seitz. Thank you all for your argument today. Your argument is a matter of advisement. You get back to you with a written decision within a short time. We will now, um, take a short recess until the 136th.